UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL SPINGOLA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>　　　　Defendant. | Case No. 18-cv-00528-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 90 |

## I. INTRODUCTION

In this action, Plaintiff Darell Spingola asserts claims for breach of express and implied warranties under California's lemon law, the Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq*. ("the Song Beverly Act"), against BMW of North America, LLC ("BMW"). Presently before the Court is BMW's Motion for Summary Judgment ("Motion"), in which BMW argues that it is entitled to summary judgment on both of Spingola's claims. Spingola conceded in his response to the Motion that his claim for breach of implied warranty fails as a matter of law and therefore, the Court GRANTS summary judgment on that claim in favor of BMW. The only remaining question is whether BMW is entitled to summary judgment on Spingola's claim for breach of express warranty under the Song Beverly Act. The Court finds that it is not and therefore DENIES summary judgment on that claim.[1]

## II. BACKGROUND

On January 11, 2011, Spingola purchased a used BMW 535i Gran Turismo (the "Vehicle") with 9,353 miles on it from a BMW dealer. Joint Proposed Final Pretrial Order at 4 ("Stipulated

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Facts"). It is undisputed that the Vehicle was sold subject to BMW's new vehicle limited warranty that covered defects in materials or workmanship for the earlier of four years or 50,000 miles from the Vehicle's original in-service date of September 1, 2010. *Id.* Based on the parties' pretrial filings, it appeared that Spingola's breach of express warranty claim was based on this warranty.

Because Spingola's pretrial filings did not clearly set forth the theory of his claims, the Court asked Spingola's counsel to identify the particular defects upon which his claims were based at the pretrial conference that was held on August 9, 2019. Spingola's counsel identified the following defects that are the basis of his claim: 1) a defect in the VANOS system that caused oil to build up and leak; and 2) improper recall work on the VANOS system that allowed contaminants to flow through the engine, causing problems such as rough running and sputtering. *See* Transcript of August 8, 2019 Pretrial Conference (Docket No. 88) at 3-4. The Court made clear that Spingola would be held to these two defects as the basis of his claims. Docket No. 88 (Transcript of August 9, 2019 pretrial conference) at 16.

Spingola's expert, Daniel Calif, explains in his expert report that VANOS refers to a variable valve timing system that is used in 2010 BMW 5 series vehicles and that in some BMW documents it is also referred to as "Valvetronic system." Calef Decl., Ex. 4 (Calef Report) at 2; *see also* Curtis Reply Decl., Ex. A (Calef Dep.) at 151 (testifying that the VANOS system and the Valvetronic sytem are "intrinsically tied together" even though they are different systems). Calef testified unequivocally at his deposition that the defects that are the basis of Spingola's claim began when the dealer performed recall work on the Vehicle's VANOS system ("the VANOS recall"), around February 15, 2015. *See* Rafael Decl., Ex. A (Calef Dep.) at 96-99. According to Calef, after that time, several repair orders showed that error code 135604, which refers to "Valvetronic system: no adjustment possible," "ha[d] been set." Calef Decl., Ex. 4 (Calef Report) at 4 (listing Repair Orders 602037, 606253 and 620525); *see also* Barry Decl., Exs. 3-5 (Repair Orders 602037, 606253 and 620525). Calef also states in his report that the value of the Vehicle is substantially impaired as a result of the "VANOS defect" – which he describes as "an emissions related defect" – because it would not pass a California smog test and "could not be sold in

2

California but rather would have to be sold to a dealer." Calef Decl., Ex. 4 (Calef Report) at 6.

In the Motion, BMW argues that it is entitled to summary judgment on Spingola's breach of express warranty claim because it is undisputed that the new vehicle limited warranty that covered the Vehicle, which covered defects in materials or workmanship for the earlier of four years or 50,000 miles from the Vehicle's original in-service date of September 1, 2010, had already expired when the VANOS problems began. Motion at 12-13. BMW further asserts that there is no evidence of a VANOS defect – at least before September 1, 2014 when the new vehicle warranty expired. *Id*. at 13.

In his Opposition brief, Spingola responds that his claim is not based on the four-year/50,000 mile warranty but rather, on a seven-year/70,000 mile emissions warranty (hereinafter, the "7/70,000 California Emissions Warranty") that covers, among other things, the VANOS system. Opposition at 2, 5-8 (citing Calef Decl., Ex. 2). Spingola argues that because the VANOS issues he complained of began before this emissions warranty expired and there were at least two repair attempts within that warranty period, there are disputed facts that preclude summary judgment as to the breach of express warranties claim. Opposition at 5-10. Spingola also argues that it is not his burden to prove the existence of a "defect" and that he is only required to show that the Vehicle was not conformed to the express warranty. *Id*. at 3-5.

In its Reply brief, BMW argues that the Song-Beverly Act *does* require Plaintiff to prove the existence of a defect and that the words "defect" and "noncomformity" are used interchangeably in the Song-Beverly Act. Reply at 2-4. BMW further points out that Spingola did not argue in his Opposition that there was evidence of a defect prior to the expiration of the four-year/50,000 mile warranty, thus implicitly conceding that his claim fails to the extent it is based on that warranty. *Id*. at 4. BMW does not dispute that the Vehicle is covered by the 7/70,000 California Emissions Warranty but argues that it does not apply in this case because "[e]vidence of the threshold condition that is required to trigger the emissions warranty – a failed smog test – does not exist" and this is "fatal to [Spingola's] entire emissions warranty theory." *Id*. In support of this argument, BMW cites to language in the Vehicle's warranty booklet stating that "[t]o obtain service under this warranty, the vehicle must be brought upon failure of a Smog

3

Check test or upon discovery of the defect, to the workshop of any authorized BMW center, during normal work hours." *Id*. at 5 (citing Trial Exhibit 23, p. 35).

BMW further asserts that Spingola has not pointed to any evidence that there is a VANOS defect and cites to Calef's testimony that the Vehicle's problem is oil contamination "caused by a technician neglecting to perform an unprescribed oil change," which BMW contends does not constitute a manufacturer "defect" under the Song-Beverly Act. *Id*. BMW also points to Calef's testimony conceding that: 1) there was no evidence that the VANOS bolts that were replaced as part of the recall were actually broken or that the VANOS system itself needed to be replaced when the recall work was performed; 2) no VANOS codes ever came up in any of the Repair Orders; and 3) the reference in his expert report to "VANOS system failures causing poor performance and diagnostic trouble code 135604 to be set" was in error because this code actually related to the Valvetronic system, which is a separate system. *Id*. at 7-11 (citing Curtis Reply Decl., Ex. A (Calef Dep.) at 126-127, 136-137, 104, 106-107, 114, 151, 119). BMW also argues that Calef's theory that the problems Spingola experienced are a result of oil contamination caused by the bolt replacement (the VANOS recall work) is supported only by the timing of the problems and the testimony of Spingola himself that when he performed an "oil flush" it mitigated the problem; BMW points out that Calef has no direct evidence supporting his theory that contaminants entered the engine when it was opened up to perform the recall work. *Id*. at 12-13.

### III. ANALYSIS

#### A. Legal Standards Governing Summary Judgment Under Rule 56

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id*.

(citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

A party need not present evidence to support or oppose a motion for summary judgment in a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Neither conclusory, speculative testimony in affidavits nor arguments in moving papers are sufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979). On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

**B. Whether BMW is Entitled to Summary Judgment on Spingola's Claim for Breach of Express Warranty**

**1. Legal Standards Governing Breach of Express Warranty Claims Under the Song Beverly Act**

Spingola's claim for breach of express warranty is asserted under Cal. Civ. Code § 1793.2(d)(2), which provides as follows:

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to

5

> the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle.

Cal. Civ. Code § 1793.2(d)(2). The elements of a claim under this section are: "(1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts." *Robertson v. Fleetwood Travel Trailers of California, Inc*., 144 Cal. App. 4th 785, 798–99 (2006). While a single repair attempt does not meet the statutory threshold, so long as there is evidence of at least two repair attempts it is up to the trier of fact to decide what constitutes a "reasonable number of attempts." *Silvio v. Ford Motor Co*., 109 Cal. App. 4th 1205, 1209 (2003), as modified (June 19, 2003) ("A trier of fact might determine that two or three or more attempts were reasonable under the circumstances of a case or were unreasonable under those circumstances.").

To prevail on a claim for breach of express warranties under the Song Beverly Act, a plaintiff is *not* required to demand that the manufacturer replace the vehicle or buy it back. *Krotin v. Porsche Cars N. Am., Inc*., 38 Cal. App. 4th 294, 302–03 (1995), as modified on denial of reh'g (Sept. 14, 1995) (holding that the Song Beverly Act "does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties – other than . . . permitting the manufacturer a reasonable opportunity to repair the vehicle."). Nor is the plaintiff required to provide evidence establishing the exact cause of a defect, so long as the plaintiff demonstrates that the vehicle does not conform to the express warranty after a reasonable number of repair attempts. *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1102 n. 8 (2001). Thus, for example, in *Oregel*, the court rejected the car manufacturer's argument that there was insufficient evidence to support a jury verdict in the plaintiff's favor based on evidence of a persistent oil leak where the plaintiff's expert could not determine the exact cause of the oil leak. *Id*. The court reasoned that "[t]he statute requires only that [the plaintiff] prove the car did not conform to the express warranty, and proof that there was a persistent leak that [the dealer] could not locate or repair suffices. We do not interpret the statute

as depriving a consumer of a remedy if he cannot do what the manufacturer, with its presumably greater expertise, was incapable of doing, i.e. identify the source of the leak." *Id*.

### 2. Overview of the California Emission Control System Warranty

It is undisputed that the Vehicle came with a seven-year/70,000 mile emissions warranty that is part of the California Emission Control System Limited Warranty described in the warranty booklet for the Vehicle at pages 34-40. *See* Raphael Decl., Ex. 23 (Trial Exhibit 23, 2010 Service and Warranty Information booklet for 1 series, 3 series, 5 series and 6 series BMW vehicles ("the warranty booklet")). The section of the booklet entitled "California Emission Control Warranty Statement* Your Warranty Rights and Obligations" states, in part, as follows:

> In California, new motor vehicles must be designed, built and equipped to meet the State's stringent anti-smog standards. BMW NA must warrant the emission control system on your vehicle for the periods of time listed below provided there has been no abuse, neglect, or improper maintenance of your vehicle.
>
> . . .
>
> **Manufacturer's Warranty Coverage:**
>
> -For 7 years or 70,000 miles . . . , whichever occurs first:
>
> If an emission-related part specially noted on page 38 as having coverage for 7 years or 70,000 miles . . . is defective, the part will be repaired or replaced by BMW NA. This is your long-term emission control DEFECTS WARRANTY.

*Id.* at 34. The California Emission Warranty Parts Lists that begins on page 38 reflects that for 535i models (the model of the Vehicle in this case), the "VANOS (VVT) Adjustment Unit" is an emission-related part that is covered by the warranty. *Id*. at 40. On the other hand, the Valvetronic Actuator, the Valvetronic Control Unit and the Valvetronic Sensor are not covered by this warranty. *Id*.

The warranty booklet goes on to describe the California Emission Control System Limited Warranty as follows:

> This warranty applies to California certified vehicles distributed by BMW of North America, LLC (BMW NA) or sold through the BMW NA European Delivery Program, registered and operated primarily in California.

7

BMW NA warrants to the original purchaser and each subsequent owner that the vehicle is:

a. designed, built and equipped so as to conform with the applicable California Air Resources Board emission standards.

b. free from defects in materials and workmanship which cause any part that can affect emissions to fail to conform with applicable requirements or to fail a California Smog Check test or EPA approved short test for a period of 3 years or 50,000 miles, whichever occurs first.

c. free from defects in materials and workmanship in emission related parts, which are contained in the California Emission Warranty Parts List on page 38, for a period of 7 years or 70,000 miles (8 years or 100,000 miles for certain models), whichever occurs first.

Coverage begins on the date of first retail sale or the date the vehicle is first placed into service as a sales demonstrator, Aftersales Mobility Program (AMP) Vehicle or company vehicle, whichever is earlier.

To obtain service under this warranty, the vehicle must be brought, upon failure of a Smog Check test or upon discovery of the defect, to the workshop of any authorized BMW center, during normal business hours. The BMW center will honor or deny your claim within 30 days. If the claim is denied, the BMW center will notify you in writing of the reason(s). The BMW center is required by law to honor the claim if notice is not given to the owner within 30 days.

The BMW center will, without charge for parts or labor (including diagnosis), either adjust, repair or replace the defective part and other parts affected by the failure of the warranted part, if any. If your vehicle failed the California Smog Check test or an EPA approved short test, then BMW NA will repair your vehicle so that it will pass this test. Items that require scheduled replacement are warranted up to the replacement interval specified in the Service section of this Statement. BMW NA may repair a part in lieu of replacing it when performing warranty repairs. Parts for which replacements are made become the property of BMW NA. After 3 years or 50,000 miles, and in accordance with paragraph (c) above, such repairs are limited to the repair or replacement of those parts identified in the California Emissions Warranty List.

If your California registered vehicle is between 7 and 8 years old and has been driven less than 80,000 miles, then your vehicle is eligible for additional warranty coverage under the Federal Emissions Warranty. A repair performed as the result of a Smog Check test failure due to a defect in a part, which is warranted for 7 years/70,000 miles (8 years or 100,000 miles for certain models), is covered.

. . .

> **What is not covered**
>
> This warranty does not cover malfunctions caused by any of the following: accident, flood, misuse, modification, alteration, tampering, disconnection, improper or inadequate maintenance, except if performed by an authorized BMW center doing warranty repair work, use of leaded fuel or fuel other than as specified in the Owner's Manual.
>
> . . .

*Id*. at 35-36.

### 3. Discussion

BMW argues that Spingola's breach of express warranty claim under the Song Beverly Act fails, as a matter of law, to the extent it is based on the seven year/70,000 mile protection under the California Emissions Warranty for two reasons: 1) the warranty only applies if a vehicle failed the California Smog Test and there is no evidence that the Vehicle in this case ever failed a Smog Test; and 2) there is no evidence in the record of the VANOS system in Spingola's vehicle is defective and therefore there is no genuine dispute of material fact that would allow Spingola's claim to survive summary judgment. The Court rejects both arguments.

With respect to the first argument, although it is clear from the language of the California Emission Warranty that a failed smog test may trigger coverage, nothing in the description of the warranty *limits* coverage to situations where a vehicle failed a smog test. Moreover, the language BMW relies upon in support of this argument supports the opposite conclusion, stating that to obtain service under the California Emission Control Warranty the "vehicle must be brought, upon failure of a Smog Check test *or upon discovery of the* defect, to the workshop of any authorized BMW Center." Raphael Decl., Ex. 23 at 35 (emphasis added). To the extent this language might be read to require that "the defect" is one which would result in a failed smog test if such a test were conducted (a question the Court need not decide), there is evidence in the record of such a defect as Calef stated in his report that the Valvetronic code that was set in the Vehicle after the recall work would have prevented it from passing a California Smog Test. *See* Calef Decl., Ex. 4 (Calef Report) at 6. Therefore, the Court concludes that Spingola may rely on the 7/70,000 California Emissions Warranty even though there is no evidence that his vehicle failed a California Smog Test.

The more difficult question is whether Spingola has demonstrated that there is a material dispute of fact as to whether BMW failed to conform the vehicle to the 7/70,000 California Emissions Warranty. The scope of that warranty is relatively narrow, covering only "defects in materials and workmanship" in certain specifically enumerated parts; in contrast, the three-year/50,0000 mile warranty of the California Emission Control System Limited Warranty – which Spingola does not invoke – warrants that the vehicle will be "free from defects in materials and workmanship which cause *any part that can affect emissions* to fail to conform with applicable requirements or to fail a California Smog Check test or EPA approved short test." Consequently, the Court finds that to establish that BMW failed to conform the vehicle to the 7/70,000 California Emission Warranty, Spingola must establish that there was a defect specifically *in the VANOS unit* that is covered by this warranty.[2]

As Spingola's expert conceded at his deposition (and Plaintiff stipulated at oral argument), there is no evidence in the record that the bolts that were replaced under the VANOS recall were broken or defective. *See* Curtis Decl., Ex. A (Calef Dep.) at 127-128. Calef also conceded that the instructions for the VANOS recall stated that the entire VANOS system should be replaced if any bolts were found to be loose or broken when the recall work was performed but that there is no evidence that the dealer replaced the VANOS system when it performed the recall work on Spingola's Vehicle. *Id*. Nor has Spingola cited authority to support counsel's assertion at the pretrial conference that the mere *fact* that there was a recall establishes the existence of a defect in Spingola's Vehicle.

On the other hand, some of the opinions offered by Calef indicate that the recall work that was performed on the Vehicle rendered the VANOS system defective. In particular, he stated in his report that the problems with the "check engine" and "service engine soon" lights coming on, poor performance and the Valvetronic code 135604 being set were likely the result of VANOS system failures. Calef Decl., Ex. 4 (Calef Report) at 3. While it is true that Calef has conceded that the VANOS and Valvetronic systems are separate systems and that code 135604 is not a

---

[2] At the motion hearing, Spingola stipulated that the Court is correct on this point.

10

VANOS code, he also testified at his deposition that the two systems are "intrinsically tied together." Curtis Decl., Ex. A (Calef Dep.) at 151. The Court cannot say, as a matter of law, that no reasonable jury could find, based on the opinions of Spingola's expert, that the problems with Spingola's Vehicle could not have resulted from defects in the VANOS system caused by faulty work performed as part of the VANOS recall.

Finally, the Court rejects BMW's argument that the contamination that has caused the problems identified by Spingola's expert was the result of a technician's error and therefore cannot be a "defect" under the Song Beverly Act. *See* Reply at 5. BMW cites no authority in support of that proposition. Moreover, the language of the California Emission Control System Limited Warranty appears to cover defects caused by inadequate maintenance performed by a dealer when it is doing warranty repairs. In particular, while it excludes coverage for "malfunctions caused by . . . inadequate maintenance" it carves out an exception to that exclusion for malfunctions caused by maintenance that was "performed by an authorized BMW center doing warranty repair work." Raphael Decl., Ex. 23 at 36.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED as to the breach of implied warranty claim, which is dismissed with prejudice. The Motion is DENIED with respect to the express warranty claim.

**IT IS SO ORDERED.**

Dated: November 15, 2019

JOSEPH C. SPERO
Chief Magistrate Judge